

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JOCHEN E. PENDLETON,

                Plaintiff,

   v.

REVATURE LLC et al.,

                Defendants.

CASE NO. 2:22-cv-01399-TL

ORDER ON MOTION TO CHANGE VENUE

This matter is before the Court on Defendants' Motion to Change Venue. Dkt. No. 87. Defendants seek to transfer this case from this Court to the Eastern District of Virginia. *See id.* at 1. Having reviewed the motion, Plaintiff's response (Dkt. No. 94), and Defendants' reply (Dkt. No. 96), the Court GRANTS Defendants' motion and TRANSFERS this case to the United States District Court for the Eastern District of Virginia.

## I.      BACKGROUND

This is a fractious employment-discrimination case with a complicated procedural history. This matter has wended its way to and from the Court of Appeals multiple times on

1    multiple issues, and the Court has refereed numerous allegations of unprofessionalism,

2    obstructionism, and bias. This summary presents an overview of the litigation thus far and

3    provides citations to docket entries that discuss specific issues in more detail.

4    **A.    Parties**

5        Plaintiff, Jochen E. Pendleton, is proceeding pro se.[1] Plaintiff was employed by

6    Defendant Revature LLC ("Revature") as an Associate Software Developer between August 23,

7    2021, and March 22, 2022. Dkt. No. 66 (amended complaint) at 1. During the time period

8    relevant to this complaint, Plaintiff was a resident of Seattle, Washington. *Id.* ¶ 3.

9        Defendants are Revature, a Virginia corporation headquartered in Reston, Virginia, that

10   provides "software development services" under a federal contract, and nine current and/or

11   former Revature employees: Harvey Hill, Sophia Gavrila, Chedro Cardenas, Julie Seals,

12   Benjamin Keeler, Olivia Kane Alford, Ola Ogunsanya, Jalisa Johnson, and Adrienne Bouleris.

13   *Id.* ¶¶ 4–14.

14   **B.    Summary of Allegations**

15       **1.    Discrimination and Harassment Claims (Counts I, II, and III)**

16       Plaintiff brings these claims under three federal statutes—the Americans with Disabilities

17   Act of 1990, Title VII of the Civil Rights Act of 1964, and the Rehabilitation Act of 1973—and

18   one state law, the Washington Law Against Discrimination ("WLAD"). *See* Dkt. No. 66 ¶¶ 85–

19   90. Plaintiff's allegations cover two separate, but related, sets of facts—first, the alleged

20   discrimination, and second, Defendants' response to Plaintiff's complaints about that alleged

21   discrimination.

22

23

24   _____

[1] This has not always been the case. As will be discussed below, *see infra* Section I.C.3, pro bono counsel temporarily represented Plaintiff.

Plaintiff, who represents that he "was previously diagnosed with schizoaffective disorder" (*id.* ¶ 15), alleges that, while employed at Revature between 2021 and 2022—his second stint with the company—he was subjected to various forms of discrimination, including improper disclosure of his medical condition, harassment, reprisal/retaliation, and termination (*see generally id.*). The complained-of conduct occurred while Plaintiff reported to his job remotely, from Seattle, Washington.

Plaintiff first addressed the alleged discriminatory conduct by bringing it up directly with the alleged harassers. *See id.* ¶¶ 39–40. Plaintiff engaged in correspondence and conversation with various Defendant employees, but he alleges that this served only to perpetuate the alleged mistreatment. *See id.* ¶¶ 41–44. On December 13, 2021, upon determining that "he was unlikely to receive fair treatment at Revature without some intervention," Plaintiff contacted "HR" and advised that he was "having an issue with [his] former trainer that ha[d] now spilled over to the staging team." *Id.* ¶ 45. Plaintiff "request[ed] mediation." *Id.* Plaintiff did not receive a response to his report until on or about February 15, 2022. *Id.* ¶¶ 45, 66–67.

Although Plaintiff's narrative is not entirely clear about the sequence of events that followed his contacting HR, it appears that in February and March 2022, Plaintiff had discussions with various Defendant employees regarding his allegations of harassment. *See id.* ¶¶ 69–76. Then, on March 22, 2022, Plaintiff was terminated. *Id.* ¶ 77. On March 25, 2022, Plaintiff contacted Revature's legal department to share his opinion that the company's investigation into his harassment allegations had been inadequate, and that various Defendant employees had engaged in an "obvious coverup." *Id.* ¶ 78.

## 2.    Breach of Contract and Fraudulent Misrepresentation (Count IV)

Plaintiff alleges that Revature breached its employment contract with Plaintiff by "failing to respond in good faith according to the agreed upon dispute resolution procedures." *Id.* ¶ 91.

1  Plaintiff alleges further that "Revature more than likely entered into the arbitration agreement

2  fraudulently." *Id.*

3  ### 3.  Defamation and False Light (Count V)

4  Plaintiff reported the alleged discrimination to the Equal Employment Opportunity

5  Commission ("EEOC") but alleged that Defendants lied to that agency during its investigation of

6  his claims. *See id.* ¶ 93. This, Plaintiff alleges, "injured his reputation by portraying him in a

7  false light to the EEOC, the federal agency relied upon to protect his civil rights in employment

8  matters nationwide." *Id.* [2]

9  ### 4.  Conspiracy to Obstruct Justice and Interfere with Civil Rights (Count VI)

10  Plaintiff alleged that Defendants' participation in the EEOC's investigation into his

11  discrimination and harassment claims "violated the plain language and historical intent of 42

12  U.S.C. §§ 1985(2), 1985(3) or 1986 . . . ." *Id.* ¶ 95. Plaintiff alleged that Defendants "ma[de]

13  false and misleading statements to the EEOC, conceal[ed] evidence and requir[ed] that the

14  employees concerned remain silent . . . ." *Id.* Plaintiff alleged that Defendants were motivated by

15  "class-based animus" and that they intended "to deny Plaintiff (and possibly others) equal

16  protection under the law . . . ." *Id.* [3]

17  ## C.  Procedural Background

18  Plaintiff, proceeding *in forma pauperis* ("IFP"), first brought this case in October 2022.

19  Dkt. Nos. 1 (IFP application), 5 (complaint). This case is best understood as a rope consisting of

---

22  [2] Plaintiff acknowledged that defamation and false light were state-law tort claims but did not identify under which
state's law he had brought the claims. *See id.* ¶ 1. When Defendants subsequently moved to dismiss these claims,
they argued their position pursuant to Washington law. *See* Dkt. No. 72 at 4–5. Plaintiff, in turn, rebutted these
arguments using Washington law. *See* Dkt. No. 73 at 2–4. The Court dismissed these claims. *See* Dkt. No. 80 at 6–9.

[3] The Court dismissed these claims. *See* Dkt. No. 80 at 9–12.

multiple strands, braided together into a single length. This subsection explains each strand in turn, bearing in mind that these issues have often played out before the Court simultaneously.

### 1.    Pleadings, Generally

On October 2, 2022, Plaintiff filed an application with this Court to proceed IFP. Dkt. No. 1. On October 5, 2022, the Honorable Brian A. Tsuchida, United States Magistrate Judge, granted Plaintiff's application. Dkt. No. 4. The Court docketed Plaintiff's complaint that same day. Dkt. No. 5. By December 21, 2022, service had been completed as to all Defendants. *See* Dkt. Nos. 12–16, 19, 21. On April 24, 2023, Plaintiff filed a motion for leave to amend his complaint (Dkt. No. 37), which he subsequently withdrew on May 3, 2023 (Dkt. No. 42). On June 5, 2023, Plaintiff filed a second motion to amend his complaint (Dkt. No. 48), which the Court granted on July 18, 2023 (Dkt. No. 50). On October 29, 2024, Plaintiff filed a third motion to amend his complaint (Dkt. No. 57), which the Court denied on December 16, 2024 (Dkt. No. 61). On December 25, 2024, Plaintiff filed a fourth motion to amend his complaint (Dkt. No. 64), which the Court granted on January 15, 2025 (Dkt. No. 65). On January 16, 2025, Plaintiff filed his amended complaint. Dkt. No. 66. This remains the operative pleading in this case.

On August 15, 2025, Plaintiff filed a fifth motion to amend his complaint. Dkt. No. 93. Notably, the proposed second amended complaint seeks to add as Defendants two of Defendants' attorneys, as well as the undersigned. *Id.* at 1; Dkt. No. 93-1 (proposed second amended complaint), ¶¶ 15–17. This motion remains pending.

### 2.    Plaintiff's Anonymity

Plaintiff originally filed his case as "John Doe." *See* Dkt. No. 1. Confusingly, however, Plaintiff included his real name in some of his court filings. *See* Dkt. No. 3 (minute order). Out of an abundance of precaution, the Court directed the Clerk of Court to maintain all of Plaintiff's

filings under seal until the issue could be sorted out and Plaintiff's intentions clarified. *Id.* On October 13, 2022, the Court ordered Plaintiff to inform the Court whether he intended to proceed anonymously and, if so, to show cause as to why he should be permitted to do so. Dkt. No. 8 (order to show cause). On October 22, 2022, Plaintiff responded to the order to show cause. Dkt. No. 11. On July 18, 2023, the Court denied Plaintiff leave to proceed anonymously. Dkt. No. 50 (order on Plaintiff's anonymity). The Court dismissed the anonymous complaint (Dkt. No. 5) and gave Plaintiff 30 days to file an amended complaint under his real name. *See* Dkt. No. 50 at 18–19.

On July 23, 2023, Plaintiff appealed the Court's order on anonymity to the Ninth Circuit. Dkt. No. 51 (notice of appeal). The Ninth Circuit docketed the appeal as Case No. 23-35499 (Dkt. No. 53 (USCA time schedule order)), and this Court stayed the matter pending resolution of the appeal (Dkt. No. 52 (minute order)). The case then fell dormant for 14 months.

On September 24, 2024, the Ninth Circuit determined that Plaintiff would benefit from the appointment of pro bono counsel. *See* Dkt. No. 55 (USCA order). Before counsel could be appointed, however, Plaintiff moved to voluntarily dismiss his appeal, and on October 24, 2024, the Ninth Circuit granted Plaintiff's motion, dismissed the appeal, and returned the case to this Court. *See* Dkt. No. 56 (USCA order). This Court's order that denied Plaintiff leave to proceed anonymously (Dkt. No. 50) remained—and remains—in force.

On October 29, 2024, Plaintiff sought leave to file an amended complaint (Dkt. No. 57 (motion to amend)), and Plaintiff advised the Court of his name, Jochen E. Pendleton (Dkt. No. 58 (notice of change of address/change of name)). Plaintiff, however, persisted in using a pseudonym in the caption of his filings. *See* Dkt. No. 57 at 2. Because of this, on December 16, 2024, the Court denied Plaintiff leave to amend, advising that Plaintiff's name was "an issue that the Court exhaustively considered and clearly adjudicated in its prior order." Dkt. No. 61 (order

on motion to amend) at 5. The Court noted further that Plaintiff appeared to have abandoned the anonymity issue when he voluntarily dismissed his appeal at the Ninth Circuit. *See id.* Consequently, since December 2024, Plaintiff has prosecuted this case under his real name.

### 3. Pro Bono Counsel

On October 16, 2022, Plaintiff moved to have the Court appoint counsel to represent him. Dkt. No. 10 (motion to appoint counsel). On January 10, 2023, the Court referred the case to the Screening Committee of the Western District of Washington's Pro Bono Panel. Dkt. No. 22 (order referring to pro bono counsel). On February 8, 2023, the Screening Committee recommended that counsel be appointed, and the Court directed the Clerk of Court to identify an attorney. Dkt. No. 32 (order on appointment of counsel) at 2. On March 15, 2023, the Court appointed counsel for Plaintiff (Dkt. No. 33), who appeared on March 22, 2023 (Dkt. No. 34 (notice of appearance)).

Six weeks later, however, on May 3, 2023, Plaintiff asked his court-appointed attorney to immediately withdraw his representation, and Plaintiff's counsel moved to withdraw that day. Dkt. No. 41 (motion to withdraw). On June 9, 2023, the Court granted the motion. Dkt. No. 49 (order on motion to withdraw). Plaintiff has proceeded pro se since then.

### 4. Arbitration

On January 10, 2023, Defendants filed a motion to compel arbitration and stay claims. Dkt. No. 23 (motion to compel arbitration) (sealed). Plaintiff opposed Defendants' motion. Dkt. No. 38 (response to motion to compel arbitration). While Defendants' motion was pending, on April 24, 2023, Plaintiff sought the Court's leave to amend his complaint. Dkt. No. 37 (motion for leave to amend complaint). This, Plaintiff argued, rendered Defendants' motion moot. *See* Dkt. No. 38 at 1. Defendants' motion to compel arbitration remained undecided when, on July 18, 2023, the Court, as discussed above, denied Plaintiff leave to proceed anonymously. Dkt.

No. 50. The Court, recognizing that, in order to continue prosecuting his case, Plaintiff would need to file an amended complaint—the content of which might, in turn, impact Defendants' motion to compel arbitration—re-noted the motion to compel arbitration to give Defendants time to decide whether to supplement it, withdraw and refile it anew, or stand on it. *See id.* at 19. Before that could happen, however, Plaintiff appealed the order on anonymity, and the case went dark. *See supra* Section I.B.2. On June 24, 2024, during the pendency of Plaintiff's appeal, the Court struck Defendants' motion to compel arbitration, with leave to refile. Dkt. No. 54 (minute order). Defendants have not refiled their motion.

Although Defendants have not revisited their motion to compel arbitration, the topic remains a subject of litigation to this day. Plaintiff has made, and continues to make, serial allegations of misconduct on the part of Defendants' counsel that are predicated on arguments Defendants made in support of compelling arbitration. *See, e.g.*, Dkt. No. 60 (reply in support of motion for leave to amend complaint) at 3–5; Dkt. No. 69 (Pl.'s Opp'n to Defs.' motion to extend deadline) at 1; Dkt. No. 85 (Pl.'s motion to recuse) at 8. Plaintiff has also twice sought the recusal of the undersigned based on the Court's handling of these allegations of misconduct. *See* Dkt. Nos. 85, 95 (Pl.'s second motion for disqualification).

## 5.    Discovery Disputes

On April 24, 2025, Plaintiff filed a motion to compel discovery under Federal Rule of Civil Procedure 37. Dkt. No. 79 (motion to compel). Plaintiff argued that Defendants' responses to interrogatories and requests for admissions had not been properly verified; that Defendants were improperly withholding records that were responsive to requests for production; that Defendants should be compelled to execute an electronic service agreement with Plaintiff; and that sanctions were warranted against Defendants' counsel. *See generally id.* Plaintiff further leveled allegations of misconduct against Defendants' counsel and accused Defendants'

attorneys of, among other things, perjury. *See* Dkt. No. 84 (reply in support of motion to compel) at 6. On August 11, 2025, the Court granted in part and denied in part Plaintiff's motion. Dkt. No. 92 (order on motion to compel).

On August 28, 2025, Plaintiff appealed to the Ninth Circuit, among other things, the Court's order on his motion to compel. Dkt. No. 99 (notice of appeal). The Ninth Circuit docketed the appeal as Case No. 25-5513 (Dkt. No. 102) (USCA time schedule order), and on September 3, 2025, this Court stayed the case pending resolution of the appeal (Dkt. No. 103) (minute order). On September 30, 2025, the Ninth Circuit dismissed the appeal for lack of jurisdiction and returned the case to this Court. *See* Dkt. No. 107 (USCA order).

### 6.    Requests for Recusal and Disqualification

Plaintiff has twice sought to have the undersigned removed from this case. First, on July 16, 2025, Plaintiff filed a motion for the recusal of the undersigned pursuant to 28 U.S.C. §§ 144 and 455. Dkt. No. 85. On July 28, 2025, the Court denied Plaintiff's motion and, pursuant to Local Civil Rule 3(f), referred the matter to the Honorable David G. Estudillo, Chief Judge of the Western District of Washington. Dkt. No. 90 (order on motion to recuse). On August 11, 2025, Chief Judge Estudillo affirmed the Court's denial of Plaintiff's motion to recuse. Dkt. No. 91 (chief judge's order on motion to recuse).

Second, on August 19, 2025, Plaintiff filed a successive motion seeking the disqualification of the undersigned. Dkt. No. 95. On August 26, 2025, the Court denied Plaintiff's motion and, pursuant to Local Civil Rule 3(f), referred the matter to Chief Judge Estudillo. Dkt. No. 97 (order on motion to disqualify). On August 27, 2025, Chief Judge Estudillo affirmed the Court's denial of Plaintiff's motion. Dkt. No. 98 (chief judge's order on motion to disqualify).

On September 1, 2025, Plaintiff filed a petition for a writ of mandamus with the Ninth Circuit. Dkt. No. 101 (mandamus petition). Plaintiff sought to have the Ninth Circuit reassign this case to a judge "outside the Western District of Washington with instructions to reconsider Plaintiff's motion to compel verified discovery . . . and to declare [the undersigned's] orders from Dkt. 92 onwards void for lack of jurisdiction." *Id.* at 21. On September 9, 2025, the Ninth Circuit docketed the petition as Case No. 25-5696. Dkt. No. 105 (USCA docketing notice). On September 26, 2025, the Ninth Circuit summarily denied Plaintiff's petition. Dkt. No. 106 (USCA order on mandamus petition).

*       *       *

On July 25, 2025, Defendants filed the instant motion, seeking to transfer this case from the Western District of Washington to the Eastern District of Virginia, Alexandria Division. Dkt. No. 87. Plaintiff filed an opposition (Dkt. No. 94), and Defendants filed a reply (Dkt. No. 96).

## II.    LEGAL STANDARD

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). As a threshold matter, the movant must show that the transferee district or division is one in which the suit could have been brought in the first instance. *Rubio v. Monsanto Co.*, 181 F. Supp. 3d 746, 759 (C.D. Cal. 2016).

After this threshold has been met, a district court exercises its discretion to transfer venue "according to an individualized, case-by-case consideration of convenience and fairness." *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000) (quoting *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (internal quotation marks omitted); *see Atl. Marine Constr. Co., Inc. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 62–63 & n.6 (2013) ("[A] district court

considering a § 1404(a) motion (or a *forum non conveniens* motion) must evaluate both the

convenience of the parties and various public-interest considerations."). "[T]o warrant upsetting

the plaintiff's choice of forum," a "defendant must make a strong showing of inconvenience."

*Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986). "If transfer

would merely shift the inconvenience from one party to another, the court will deny the motion."

*Hutto v. Orion Sys. Integrators LLC*, No. C25-984, 2025 WL 2782488, at *2 (W.D. Wash. Sept.

30, 2025) (citing *Van Dusen v. Barrack*, 375 U.S. 612, 645–46 (1964)).

In the Ninth Circuit, courts consider the following factors when adjudicating a motion to

change venue:

> (1) the location where the relevant agreements were negotiated and
> executed, (2) the state that is most familiar with the governing law,
> (3) the plaintiff's choice of forum, (4) the respective parties'
> contacts with the forum, (5) the contacts relating to the plaintiff's
> cause of action in the chosen forum, (6) the differences in the costs
> of litigation in the two forums, (7) the availability of compulsory
> process to compel attendance of unwilling non-party witnesses, . . .
> (8) the ease of access to sources of proof . . . [, and (9)] the relevant
> public policy considerations of the forum state . . . .

*Jones*, 211 F.3d at 498–99.

## III.    DISCUSSION

### A.    Whether the Eastern District of Virginia Is a Proper Venue

First, the Court must consider whether this case could have been originally brought in the

Eastern District of Virginia. "A district court is one in which an action could have been brought

originally if (1) it has subject matter jurisdiction; (2) defendants would have been subject to

personal jurisdiction; and (3) venue would have been proper." *Duffy v. Facebook, Inc.*, No. C16-

6764, 2017 WL 1739109, at *3 (N.D. Cal. May 4, 2017) (citing *Hoffman v. Blaski*, 363 U.S. 335,

343–44 (1960) and *Com. Lighting Prods., Inc. v. U.S. Dist. Ct.*, 537 F.2d 1078, 1079 (9th Cir.

1976)). "[T]he posture of the case at the time of the filing in the transferor district is

determinative of whether the action was one which 'might have been brought' in the proposed transferee district." *A.J. Indus., Inc. v. U.S. Dist. Ct. for Cent. Dist. of Cal.*, 503 F.2d 384, 386 (9th Cir. 1974). In this case, the operative pleading for making such a determination is Plaintiff's original complaint (Dkt. No. 5).

As to subject-matter jurisdiction, the Eastern District of Virginia would have federal-question subject-matter jurisdiction under 28 U.S.C. § 1331, because Plaintiff originally pleaded claims based on federal law, including the Americans with Disabilities Act, the Rehabilitation Act of 1973, 42 U.S.C. §§ 1981 and 1983, and the Fourteenth Amendment of the United States Constitution. *See* Dkt. No. 5 at 4. The court would have supplemental jurisdiction over Plaintiff's state-law claims, which arise out of the same facts. *See* 28 U.S.C. § 1367.

As to personal jurisdiction, as pleaded, Plaintiff identified Revature as "a Virginia company" and alleged that the individual Defendants "are (or were) employees of Revature working out of the company headquarters in Reston, Virginia." Dkt. No. 5 at 2. "With respect to a corporation, the place of incorporation and principal place of business are paradigm bases for general jurisdiction." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (citation modified). A Virginia court could thus exercise personal jurisdiction over Revature. As to the individual Defendants, personal jurisdiction is proper because these individuals worked at Revature headquarters in Virginia (*see* Dkt. No. 5 at 2), and their "employment with a Virginia-based company" "created 'continuing obligations' between [themselves] and forum residents." *Prod. Grp. Int'l, Inc. v. Goldman*, 337 F. Supp. 2d 788, 798–99 (E.D. Va. 2004) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475–76 (1985)).

Finally, as to venue, "[t]he propriety of venue in a particular district is governed by 28 U.S.C. § 1391." *Rubio*, 181 F. Supp. 3d at 761. "A civil action may be brought in . . . a judicial

district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." 28 U.S.C. § 1391(b)(2). Here, during the time period relevant to Plaintiff's claims, Plaintiff was located in Washington, while the Revature employees allegedly responsible for the misconduct were located at the company's headquarters in Fairfax County, Virginia. *See* Dkt. No. 5 at 2–3. The complained-of conduct appears to have been experienced or ascertained by Plaintiff either online or by telephone. *See id.* at 5–6. In such circumstances, there is "no clear locus of the discrimination." *Schouker v. Swarm Indus., Inc.*, No. C24-7373, 2025 WL 948004, at *3, *6 (N.D. Cal. Mar. 28, 2025); *see Hutto*, 2025 WL 2782488, at *3–4 ("Given the virtual nature of Hutto's work and her colleagues' locations in several states, there is . . . no clear state in which the alleged events mostly occurred."). To be sure, in those instances in which individual Defendants were alleged to have *done something*, such as "commit several instances of objective harassment related to [Plaintiff's] disability," "tr[y] to conceal evidence of [their] conduct," or "threaten[] retaliation," to name three (Dkt. No. 5 at 6), they performed such acts in Virginia.

For his part, Plaintiff does not dispute that venue would be improper in the Eastern District of Virginia. Rather, Plaintiff asserts only that venue is proper in the Western District of Washington. Dkt. No. 94 at 1. But proper venue is not necessarily limited to one judicial district, and Section 1391 contemplates the propriety of a venue absolutely; it is not concerned with whether one district might be "more" proper than another. *See Hwang v. Ross*, No. C21-202, 2022 WL 22970971, at *3 (D. Alaska Aug. 16, 2022) ("When evaluating whether venue is proper, a court is not considering 'whether this district is the "best" venue, but whether the district has a "substantial" connection to plaintiffs' claims, even if other districts have greater contacts.'") (quoting *Int'l Paper Co. v. Goldschmidt*, 872 F. Supp. 2d 624, 633 (S.D. Ohio 2012)). Therefore, given the location of Revature and its employees at the time of the alleged

misconduct, and considering Plaintiff's failure to dispute Defendants' assertion that he could

have properly brought his case in the Eastern District of Virginia, the Court concludes that

Defendants have satisfied the threshold inquiry for their motion to change venue.

**B.    The *Jones* Factors**

The Court now turns to the nine factors articulated in *Jones*.

### 1.    The Location Where the Relevant Agreements Were Negotiated and Executed

Plaintiff's statutory claims do not arise out of any agreement with Defendants; those

causes of action are therefore not relevant to the Court's consideration of the first *Jones* factor.

*See Amazon.com, Inc. v. Straight Path IP Grp. Inc.*, No. C14-4561, 2015 WL 3486494, at *8

(N.D. Cal. May 28, 2015) (finding location of agreements irrelevant where agreements were not

at issue). But Plaintiff also brings a claim for breach of contract. *See* Dkt. No. 66 ¶¶ 91–92.

Specifically, Plaintiff alleges that "Defendant Revature LLC materially breached its three year

employment contract with Plaintiff . . . ." *Id.* ¶ 91. Defendants point out that Plaintiff's

employment agreements with Revature "ha[ve] a choice of law or governing law clause that

identifies Virginia law will govern the agreement(s) . . . ." Dkt. No. 87 at 3. The inquiry,

however, is into the location of the Parties when they executed the agreements, not the language

of the agreements. *See, e.g.*, *Earth Island Inst. v. Quinn*, 56 F. Supp. 3d 1110, 1117 (N.D. Cal.

2014); *Vernon v. Qwest Commc'ns Int'l, Inc.*, 643 F. Supp. 2d 1256, 1270 (W.D. Wash. 2009).

Plaintiff does not provide the "three year employment contract" that he alleges Defendants

breached, nor does he expressly assert where he was located when he signed it. But Revature—

the counterparty to any agreement he might have entered into—is a Virginia entity (*see* Dkt.

No. 66 ¶ 4) and was definitively located in Reston, Virginia, within the Eastern District of

Virginia, *see* 28 U.S.C. § 127(a), when Plaintiff contracted with it. *See* Dkt. Nos. 88-1 (non-

piracy and non-solicitation agreement); 88-2 (training agreement); 88-3 (mutual agreement to arbitrate disputes); 88-4 (restrictive covenant agreement); 88-5 (training and two-year retention agreement). Given Plaintiff's silence on the crucial detail of where he was when he signed the agreement at issue, and in light of the fact that the bulk of this case comprises statutory claims, this factor weighs slightly in favor of Virginia.

### 2.    The State That Is Most Familiar With the Governing Law

As to the claims based on federal statute, this factor is neutral. Both this District and the Eastern District of Virginia are equally familiar with the ADA, Title VII, and the Rehabilitation Act. *See, e.g.*, *Jiujiang Xiangmojin Trading Co Ltd v. Interlink Prods. Int'l, Inc.*, No. C24-2034, 2025 WL 2966307, at *3 (W.D. Wash. Oct. 21, 2025) (finding factor "inapplicable" to federal claim); *Kempton v. Life for Relief & Dev. Inc.*, No. C19-2156, 2019 WL 5188750, at *3 (D. Ariz. Oct. 15, 2019) (finding transferor and transferee districts "equally familiar with" federal statute at issue).

As to Plaintiff's claim based on the Washington Law Against Discrimination, this Court is undoubtedly more familiar with this state law than a Virginia court. However, "Washington courts still look to federal case law interpreting [Title VII and ADA] to guide [their] interpretation of the WLAD." *Kumar v. Gate Gourmet Inc.*, 180 Wn.2d 481, 491, 325 P.3d 193 (2014). Moreover, "courts in one state are fully capable of applying another state's substantive law." *Hawkins v. Gerber Prods. Co.*, 924 F. Supp. 2d 1208, 1216 (S.D. Cal. 2013) (citation modified). The gulf between this Court's and a Virginia court's respective familiarities with the WLAD is therefore not nearly as wide—or as consequential—as it might seem at first glance.

As to Plaintiff's various state-law claims, the Court dismissed Plaintiff's tort claims of defamation and invasion of privacy (*see* Dkt. No. 80 at 13), and Plaintiff's breach-of-contract claim is governed by Virginia law. *See* Dkt. No. 87 at 3 ("Each of these agreements [between

Plaintiff and Revature] has a choice of law or governing law clause that identifies Virginia law

will govern the agreement(s) . . . .”). Plaintiff’s remaining tort claim—fraudulent

misrepresentation—appears to have been brought under Virginia law. *See* Dkt. No. 66 ¶ 92

(alleging that Revature “is liable for all resulting damages sustained by Plaintiff as allowed by

Virginia law” and citing Fourth Circuit case law in support of his allegations).

Therefore, this factor weighs slightly in favor of Virginia. Plaintiff has pleaded some

claims that would be more familiar to this Court, and some claims that would be more familiar to

a Virginia court. But the Virginia-law claim of fraudulent misrepresentation tips the balance

toward that state.

### 3.    The Plaintiff’s Choice of Forum

Plaintiff has chosen the Western District of Washington as the forum for this case.

“However, the weight given to the plaintiff’s choice of forum diminishes when the plaintiff

resides outside the chosen forum.” *Yeti Data, Inc. v. Snowflake, Inc.*, No. C20-6595, 2020 WL

8174630, at *2 (C.D. Cal. Nov. 9, 2020) (quoting *Lopez v. Chertoff*, No. C06-5000, 2007 WL

2113494, at *2 (N.D. Cal. July 20, 2007)). Moreover, the Court further de-emphasizes Plaintiff’s

choice of forum given his recent request that the Ninth Circuit re-assign this case to a judge

outside of the Western District of Washington. *See* Dkt. No. 101 at 2 (Plaintiff’s petition to the

Ninth Circuit “seeking a writ of mandamus reassigning this case to a judge outside the Western

District of Washington”).

Still, that Plaintiff’s choice is diminished does not mean that it is disregarded. *See Gemini*

*Capital Grp., Inc. v. Yap Fishing Corp.*, 150 F.3d 1088, 1091 (9th Cir. 1998) (affirming district

court’s decision to grant non-resident plaintiff’s choice of forum “less deference”). Even where

“the forum of the original selection . . . has *no particular interest* in the parties or subject

matter,” Ninth Circuit precedent still holds that a plaintiff’s choice of forum is entitled to

"minimal"—i.e., not zero—consideration. *Pac. Car & Foundry Co. v. Pence*, 403 F.2d 949, 954 (9th Cir. 1968) (emphasis added). As discussed above, *see supra* Section III.B.2, Washington has at least some interest in this case with respect to subject matter.

Therefore, this factor weighs very slightly in favor of Washington.

### 4.    The Respective Parties' Contacts with the Forum

#### a.    *Washington*

Here, none of the Parties maintains significant contacts with Washington. Plaintiff appears to have resided in Washington for only a relatively short amount of time. *See* Dkt. No. 94 at 2 (asserting that Plaintiff moved to Texas in March 2022). In opposing Defendants' motion, Plaintiff does not assert, or even suggest, that he maintains any contacts with Washington or has any connection with Washington beyond his brief residence there in or around 2021 and 2022. *See generally* Dkt. No. 94. For their part, Defendants assert that "Revature does not have a significant relationship with Washington." Dkt. No. 87 at 9. "Revature does not have any operations, officers, or any other business connections to Washington state." Dkt. No. 89 (Hoeller Decl.) ¶ 4. None of the individual Defendants resides in Washington. *See* Dkt. No. 88 (O'Connor Decl.) ¶ 7. Plaintiff's partially substantiated assertion that "Revature currently employs around 17 people in Washington" (Dkt. No. 94 at 2) does not, without more, demonstrate Revature's maintenance of significant contacts with this state. *See Buzzballz, LLC v. MPL Brands NV, Inc.*, 741 F. Supp. 3d 889, 897 (D. Nev. 2024) (finding that the mere presence of remote employees in the transferor district, none of whom was required to live there by their employer and none of whom had any "relation to the facts regarding any alleg[ation]" in the case, supported "keeping th[e] case" in transferor district).

//

//

b.    *Virginia*

With respect to Virginia, beyond Plaintiff's relationship with Revature, a Virginia company, Plaintiff does not appear to maintain any contacts with Virginia. Revature, however, is headquartered in Reston, Virginia (*see* Dkt. No. 96 at 4 n.3), and at least four individual Defendants reside in Virginia (*see* Dkt. No. 88 ¶ 7). On balance, the Parties maintain more substantial contacts with Virginia than they do with Washington.

Therefore, this factor weighs in favor of Virginia.

**5.    The Contacts Relating to the Plaintiff's Cause of Action in the Chosen Forum**

As discussed above, where harassment or discrimination occurs online, and the alleged harasser is located in a different state than the alleged harassee, there is "no clear locus of the discrimination." *Schouker*, 2025 WL 948004, at *3 (internal quotations omitted). Plaintiff asserts that "Washington State was the anticipated place of contract performance because Plaintiff was paid Seattle's minimum wage throughout his employment with Revature." Dkt. No. 94 at 1. Even so, this is mitigated by the choice-of-law clause in Plaintiff's employment agreements with Revature, which specifically contemplate that although Plaintiff's employment contract "may be performed in different places[,] . . . [a]ll matters relating to the validify [*sic*], construction, performance, enforcement, and interpretation . . . will be governed by and determined under the laws of Virginia." Dkt. No. 87 at 2–3. In short, the harassment- and discrimination-related claims bear equally significant contacts with Washington and Virginia, and the breach-of-contract claim—because of the choice-of-law provision in the contract—bears significant contact with Virginia.

Therefore, this factor weighs in favor of Virginia.

//

//

### 6.    The Differences in the Costs of Litigation in the Two Forums

Defendants focus their discussion of this factor on "the relative convenience to the witnesses" and assert that "there are <u>no</u> party or non-party witnesses residing in the Western District of Washington." Dkt. No. 87 at 10. "If this matter is tried in Seattle," Defendants argue further, "all nine individual defendants and various Revature corporate representatives would be required to travel at great expense and inconvenience to Seattle to testify in this matter." Dkt. No. 96 at 4.

For his part, Plaintiff discounts Defendants' concern by asserting that "[t]he majority of the parties will be appearing remotely in any forum because most are not based in Virginia." Dkt. No. 94 at 2. But pursuant to Section VI.E of this Court's Standing Order for All Civil Cases, "Unless otherwise specified, hearings are in person." Federal Rule of Civil Procedure 43(a) permits remote testimony, but only "[f]or good cause in compelling circumstances and with appropriate safeguards." Similarly, under Federal Rule of Civil Procedure 77(b), "Every trial on the merits must be conducted in open court and, so far as convenient, in a regular courtroom." *See Julian Liu v. State Farm Mut. Auto. Ins. Co.*, 507 F. Supp. 3d 1262, 1264 (W.D. Wash. 2020) (discussing the "Court's authority to convene a jury trial by contemporaneous video conferencing technology"). Plaintiff's blithe assurance that Parties will attend this trial remotely—something the Federal Rules contemplate as an extraordinary occurrence—does not rest on any cited authority. Given Defendants' opposition to a "completely remote trial" (Dkt. No. 96 at 5), Plaintiff would face an uphill battle to render a virtual tribunal a reality in this case. *See Bao Xuyen Le v. Reverend Dr. Martin Luther King, Jr. County*, 524 F. Supp. 3d 1113, 1116 (W.D. Wash. 2021) (applying Rule 43(a)'s twin standards of "good cause in compelling circumstances" and "appropriate safeguards" when considering whether "to proceed remotely over defendants' objections"). Under present circumstances, the Court—unlike Plaintiff—is

unwilling to bank as a given the cost savings and relative convenience that might be afforded by a remote trial.

Plaintiff asserts further that "[t]he appearance of non-party witnesses is pure speculation at this point and the overwhelming majority of *potential* non-party witnesses are . . . scattered all over the United States." Dkt. No. 94 at 2. But even if the unknown identities—or, for that matter, existence—of non-party witnesses make it impossible to determine which forum would be more convenient, such uncertainty merely renders this aspect neutral with respect to whether Washington or Virginia represents a less expensive location to try this case. As to *party* witnesses, however, Virginia is very clearly the more convenient location. Four individual Defendants reside in Virginia (*see* Dkt. No. 88 ¶ 7), and Virginia would undoubtedly be less expensive for those Revature employees who work at the company's headquarters in Reston.

Therefore, this factor weighs in favor of Virginia.

### 7.    The Availability of Compulsory Process to Compel Attendance of Unwilling Non-Party Witnesses

Neither Party identifies any potentially unwilling non-party witnesses. Defendants argue, generically, that "[t]here are no material non-party witnesses who reside in the Western District of Washington or anywhere close to this court." Dkt. No. 87 at 10. "Rather," Defendants continue, "the much more likely material, non-party and potentially *unwilling* witnesses will all be in Virginia or neighboring states." *Id.* Plaintiff's position on this factor, in as much as he asserts one, is that "the overwhelming majority of *potential* non-party witnesses are again scattered all over the United States." Dkt. No. 94 at 2. This is essentially an assertion that this factor is neutral, and it fails to meet Defendants' speculative—and even tenuous—argument that this factor points toward Virginia. Although the Court is not *persuaded* by Defendants' assertion that more potentially unwilling material witnesses are located in Virginia, Defendants have at

least presented an argument, however thin, in support of their position, that Plaintiff has not meaningfully rebutted.

Therefore, on the record before the Court, this factor weighs in favor of Virginia.

### 8.    The Ease of Access to Sources of Proof

The Parties approach the eighth factor similarly to how they approach the seventh. Defendants assert that "the preponderance of the relevant records are in Virginia at Revature's headquarters, not in the Western District of Washington." Dkt. No. 87 at 10. For his part, Plaintiff does not discuss the location of relevant records or other evidence. *See* Dkt. No. 94. The Court will not endeavor to make an argument on behalf of Plaintiff.

Therefore, this factor weighs in favor of Virginia.

### 9.    The Relevant Public Policy Considerations of the Forum State

Neither Party discusses the ninth factor. "Public policy factors include the 'local interest in having localized controversies decided at home' and deciding cases 'where the claim arose.'" *Lifelast, Inc. v. Charter Oak Fire Ins. Co.*, No. C14-1031, 2014 WL 4925493, at *8 (W.D. Wash. Sept. 29, 2014) (quoting *Decker Coal*, 805 F.2d at 843). "Additionally, states have an interest in providing a forum for their injured residents." *Id.* (citing *Gordy v. Daily News, L.P.*, 95 F.3d 829, 836 (9th Cir. 1996)). None of these considerations is relevant here. Given the virtual nature of the complained-of conduct, this case presents the opposite of a "localized controversy" and, as discussed above, there is no one state "where the claim arose." It is arguable that, given Plaintiff's invocation of WLAD, Washington has an interest in providing a forum for the application of that statute, but such consideration is diminished where, as here, Plaintiff is not a resident whom the law is aimed at protecting. *See* RCW 49.60.010 (defining the purpose of WLAD as "an exercise of the police power of the state for the protection of the public welfare, health, and peace of the *people of this state*, and in fulfillment of the provisions of the

Constitution of this state concerning civil rights" (emphasis added)). Further, Plaintiff has affirmatively sought to remove this litigation from the Western District of Washington. *See* Dkt. No. 101 at 2.

Therefore, this factor is neutral.

\*          \*          \*

Having weighed the factors, the Court concludes that transfer to the Eastern District of Virginia is appropriate. The Court leaves the divisional assignment of this case to the clerk of that court. *See* E.D. Va. Loc. Civ. R. 3(C).

## IV.    CONCLUSION

Accordingly, Defendants' motion to transfer venue (Dkt. No. 87) is GRANTED. It is hereby ordered:

(1)    This case is TRANSFERRED to the Eastern District of Virginia.

(2)    The Clerk of Court is DIRECTED to close this matter after the transfer of the case.

Dated this 7th day of November 2025.

Tana Lin
United States District Judge